JOHN Z. WARYCH et al., Respondents, *v.* CITY OF SCHENECTADY, Appellant.

Third Department, March 14, 1951.

*Harold E. Blodgett* for appellant.

*Alexander Grasso* for respondents.

*Per Curiam.* In constructing a storm sewer in 1941 in a street on a sharp grade, the City of Schenectady used a forty-two-ton caterpillar-tread crane. After the sewer pipe was laid, the excavation was filled in with sand and run of the bank gravel. When the work for the week concluded on Friday, August 29th, the crane was left by the city employees on top of the fill. Under the crane, and supporting it in this position, was a cradle of two timber mats, each forty-eight square feet in dimension.

The United States weather forecast for Sunday, August 31st, and September 1st was " considerable cloudiness " and "occasional light showers ". On the night of August 31st–September 1st there was rainfall of cloudburst proportions. For ten minutes of that night rain fell at the rate of 5.04 inches. The rain was described as " torrential " and a city meteorologist testified that he was unable to find any record in Schenectady of a greater combination of intensity and total precipitation.

The fill was washed out in such a manner as to cause the crane to sink, and the crane boom to do damage to plaintiff's building; and the triers of the facts could also find, although there is dispute about this, that the sinking of the crane caused a break or separation of a water main, the flow of water from which did further damage to the foundation and sidewall of the structure.

Liability could not rest on a failure of the city to anticipate and prepare for rainfall of this magnitude and intensity, and the only tenable theory of liability would rest on a departure from sound and accepted practice in the manner in which the crane was left on newly filled ground. There is no sufficient basis in this record upon which to predicate liability on the failure of the city to move the crane after it could be observed, in the course of the torrential rain, that it was sinking in the filled-in excavation.

The essential question submitted to the jury was whether it was negligence for the city to have placed and left the crane on the filled-in ground and whether this was in accordance with " good engineering practice ". There is no proof in the record

that leaving the crane here, placed as it was on a cradle of two timber mats each forty-eight square feet, was not in accordance with sound engineering practice. There is, on the other hand, undisputed proof that this was in accord with such practice.

The only proof that sound practice was not followed in the work as a whole is the testimony of a casual observer that he " saw " the fill put in and that he did not " see " any tamping of the fill or water being fed in and, on the basis of his contracting experience, that tamping and water were accepted methods. The continuity or exact circumstance of these casual observations from which categorical negatives were drawn are not shown; and there is affirmative testimony by the city engineer Blessing, whose job it was to see, that he did " see " the manner in which the fill was tamped with a pneumatic tamper and by hand and that what he saw was in accordance with sound practice.

As the record reaches us, the method of tamping is the only possible basis of negligence under plaintiffs' proof. There is no expert or other opinion or any proof whatever that if there had been water tamping in the fill, or if it had been tamped differently, it would have made the slightest difference in the face of the volume of rain that fell on Sunday night. That an ordinary rain, which the city might reasonably have expected, would not have caused the failure in stability of the fill, is demonstrated by the fact the fill did not begin to fall until rain of cloud-burst proportions had fallen.

The judgment should be reversed on the law and the facts, and a new trial ordered, with costs to abide the event.

FOSTER, P. J., HEFFERNAN and BERGAN, JJ., concur; BREWSTER, J., dissents, in the following memorandum in which COON, J., concurs: I am of the opinion that the evidence presented questions of fact as to whether the defendant was negligent in parking and leaving the crane on top of the deep newly made fill which had been completed but a few hours previously, and whether such negligence was a proximate cause of the damage to plaintiffs' dwelling. I think the jury's findings upon those questions are amply supported by the evidence. The opinion evidence did not close the field to the jury as regards whether the employment of even proper methods of tamping the new fill had so compacted it that the defendant exercised reasonable care in relying upon its safety as a place to leave the forty-two-ton crane. Moreover the soundness of the opinion testimony itself was here for the jury to determine in its consideration of

its apparent reasonableness or their confidence in the skill and trustworthiness of the witness. (20 Am. Jur., Evidence, § 782, p. 654.)

Judgment reversed on the law and the facts and a new trial ordered, with costs to abide the event.